# In the United States Court of Federal Claims

No. 14-250 C
(Filed December 20, 2016)
**UNPUBLISHED**

* * * * * * * * * * * * * * * * * * * *

CALIFORNIA RIDGE WIND     *
ENERGY LLC and INVENERGY     *
WIND LLC,     *    Motion to Compel Responses to
    *    Interrogatories; Expert Discovery
    *Plaintiffs*,     *    Appropriate to Explore
    *    Government's Contentions
v.     *    of Fact and Law Regarding Fair
    *    Market Value of Wind Energy
THE UNITED STATES,     *    Facility Development Fee.
    *
    *Defendant*.     *

* * * * * * * * * * * * * * * * * * * *

*John C. Hayes, Jr.*, Washington, DC, for plaintiffs. *Alycia A. Ziarno*, *Brian P. Donnelly* and *Brian J. Whittaker*, Washington, DC, of counsel.

*Miranda Bureau*, United States Department of Justice Tax Division, with whom were *Caroline D. Ciraolo*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, *G. Robson Stewart*, Assistant Chief, *S. Starling Marshall* and *Blaine G. Saito*, Trial Attorneys, Washington, DC, for defendant.

————————————

**OPINION**

————————————

**Bush**, *Senior Judge*.

The court has before it Plaintiffs' Motion to Compel Discovery Responses, filed July 21, 2016. Oral argument on the motion was held on November 29, 2016. During the briefing of plaintiffs' motion the parties were able to resolve

some of their disputes, and just before oral argument the government supplemented its response to two of plaintiffs' contention interrogatories. Thus, in the court's view, the outstanding controversy concerns five of the government's responses to plaintiffs' contention interrogatories. According to plaintiffs' reply brief, plaintiffs seek "an order compelling Defendant to provide timely amendments to its responses to Invenergy's contention interrogatories." Pls.' Reply at 10. Plaintiffs' motion is denied, for the reasons stated below.

## I.    Contention Interrogatories in General

The court need not dwell overlong on the caselaw cited by the parties which states and restates various perspectives regarding the appropriateness and timing of contention interrogatories. Much of the caselaw cited by plaintiffs, *see id.* at 6-7, is focused specifically on patent litigation discovery, a type of discovery not at issue in this case. The government, for its part, relies on a number of cases that are not binding on this court, and which are not sufficiently analogous to this case to provide much useful guidance. *See* Def.'s Opp. at 7-8, 14-15. Defendant does cite to one case, however, which has a great number of parallels to the current dispute, and which evinces a well-reasoned analysis of the proper use and timing of contention interrogatories in circumstances similar to those present in this case. *Id.* at 16. The case cited by defendant, *BB & T Corp. v. United States*, 233 F.R.D. 447 (M.D.N.C. 2006), provides a persuasive analysis that guides this court in resolving the parties' discovery dispute. The court notes, too, that it enjoys wide discretion in resolving discovery disputes and scheduling discovery so that cases before it may proceed justly and efficiently. *See, e.g., Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991))).

*BB & T* provides an explanation of the use of contention interrogatories:

> [When a] plaintiff seeks to discover [a] defendant's factual and legal bases for its defense[,] [t]his type of discovery is termed "contention discovery" and is usually conducted by serving "contention interrogatories" as opposed to taking a deposition of a party or its attorneys.

233 F.R.D. at 447.  It is important to note that in *BB & T*, the contention discovery targeted the government's rejection of certain deductions on the plaintiff's tax return.  *Id.*  Similarly, in this case, plaintiffs' contention discovery targets Treasury's rejection of the amount of plaintiffs' claimed cost basis for a wind power facility, an amount which is determinative of the size of a grant award by Treasury to plaintiffs.  *See* Pls.' Reply at 7 (noting that plaintiffs' contention discovery focuses on the "central issue to Plaintiffs' claim," *i.e.*, "the very justification given by Treasury for reducing California Ridge's grant award").  Thus, the contention discovery disputes in *BB & T* and in this case are quite similar in focus.[1]

The basic framework of the contention discovery dispute in *BB & T* involved both contention interrogatories and contention depositions, as does the litigation in the present case and its companion case, *Bishop Hill Energy LLC v. United States*, No. 14-251C.  Just as in this case and *Bishop Hill*, the plaintiff in *BB & T* began with contention interrogatories and later turned to contention depositions when the contention interrogatories were not fruitful:

> Plaintiff did first attempt to use contention interrogatories.  Seven months [before noticing contention depositions], BB & T served eleven interrogatories seeking contention information.  It complains that the response by the United States fails to identify any relevant facts and provides only a superficial discussion of the United States' legal basis for its defense. . . .  The Court agrees that th[e] answer given by the United States is rather cursory.

233 F.R.D. at 448-49.  In the subject matter, plaintiffs have similar complaints regarding the government's responses to their contention interrogatories.  *See* Pls.' Mot. at 16-19.

---

[1]/  The taxpayer in *BB & T* also engaged in complicated business transactions, 233 F.R.D. at 448, analogous to the complex business transactions that underlie the wind power facility investments of plaintiffs.

Although the *BB & T* court agreed with the plaintiff that the government's response to the contention interrogatories was "rather cursory and unhelpful," the court nonetheless quashed the contention depositions sought by the plaintiff. *Id.* at 449.  The court offered several reasons why the plaintiff would be denied contention discovery at that stage of the litigation.  Of most interest here, the timing of the contention discovery was held to be premature.  The following excerpts of the court's decision explain that ruling:

> A third reason for granting the protective order [in favor of the government] concerns the element of timing.  And, the timing issue implicates the much larger and more general issue of whether contention discovery should be allowed at all.  Contention discovery, whether in the form of contention interrogatories or contention depositions, can be disruptive mainly because the very nature of such questions will normally require the help of an attorney to assist the client in providing answers. This type of discovery can add considerable expense to any lawsuit.  In addition to the extra cost, when lawyers craft responses they will necessarily do so in a way that most minimizes jeopardy to their client and, therefore, contention discovery may yield little additional useful information.  Consequently, when the facts, evidence, and law are relatively straightforward such as in a simple traffic accident case, the need for contention discovery may be outweighed by the burdens of contention interrogatories, much less contention depositions of attorneys.  On the other hand, when a case involves complicated technical issues such as may arise in patent litigation, contention interrogatories may be useful.
>
> The instant case lies somewhere between the two.  The necessity for contention interrogatories seemingly arises in government litigation because the government is often making policy through an enforcement action and not just relying on past decisions.  Thus, in the instant case, plaintiff perceives that the government, for policy

reasons, altered its position when it decided to go after [complex business transactions] such as plaintiff's. From plaintiff BB & T's viewpoint, the government's defense seems like a moving target and it would like to have the government commit itself to a particular position and explain its reasons.

With this last proposition, the government does not disagree, but argues that the real issue concerns the appropriate time and manner for such revelations. The government asserts that it has been busy during discovery trying to learn facts and until it has a sufficient, comprehensive view of the facts, it will not be able to provide a final opinion concerning its contentions. It continues that its earlier answers to the contention interrogatories at least provided the broad outlines of its defense. However, the Fed. R. Civ. P. 26(a)(2) report of its expert witness to be served on February 15, 2006 will allegedly contain a complete statement of the expert's opinion concerning the defense, the basis and reasons for that opinion, and the data and information on which the expert relied. At that time, defendant contends BB & T will have full knowledge of the facts and legal theory of the government's defense.

The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery. Even in a case not involving expert witnesses, contention interrogatories should normally be conducted at the end of discovery. Thus, an additional reason to quash the deposition[] notices is that they are premature.

The final reason for quashing the "contention

5

> depositions" is that it is not clear that they are necessary.
> A court may be well advised to examine whether
> contention discovery is truly necessary in any particular
> case. As the United States points out, contention
> discovery often requires a party to, in essence, prepare a
> trial brief at an earlier time in the litigation process than
> normally occurs. Without some specific reason to
> require such an acceleration, the Court may well deem
> the burden to outweigh the benefit. In the ordinary case,
> the complaint, answer, disclosures, and discovery will
> provide sufficient information about a party's position
> until such time as the filing of the dispositive motions or
> trial briefs. In other cases, contention discovery may be
> necessary to avoid surprises at trial. Courts may wish to
> confine contention discovery to those cases where there
> is a compelling, specific need for the information prior to
> the filing of dispositive motions in order to keep
> litigation costs down.

*Id.* at 449-451 (footnote and citations omitted).

Given the parallels between the discovery dispute in *BB & T* and the discovery dispute in this case and its companion case *Bishop Hill*, the court views the analysis of the discovery scheduling dispute in *BB & T*, particularly as to the timing of contention discovery, to be persuasive. The court also agrees with the *BB & T* court's general preference for contention interrogatories, rather than contention depositions. *See* 233 F.R.D. at 449 ("[U]ntil a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery."). The court turns now to the contention discovery requested by plaintiffs in this case.

## II.   Plaintiffs' Contention Interrogatories

The five contention interrogatories for which defendant's responses are still in dispute in this case are as follows:

**Interrogatory 1**:  Do you contend that the development

6

fee of $50,000,000 included as part of the cost basis in
the California Ridge Application exceeded open market
expectations for projects of the size of California Ridge
and in the location of California Ridge?

**Interrogatory 2**:  If the answer to the foregoing
interrogatory is yes, set forth all facts which you contend
support that contention.

**Interrogatory 15**:  Do you contend that the amount of
the development fees included in the cost basis of other
wind energy facilities similar in size to California
Ridge's and placed in service around the same time as
California Ridge's are not relevant to a determination of
the fair market value of the development fee included in
the claimed qualified cost basis of the California Ridge
facility?

**Interrogatory 16**:  If the answer to interrogatory number
15 is yes, set forth all facts upon which you rely to
support that contention.

**Interrogatory 17**:  If the answer to interrogatory 15 is
that the amount of the development fees included in the
cost basis of other wind energy facilities similar in size
to California Ridge's and placed in service around the
same time as California Ridge's are relevant, identify
each and every one of those wind energy projects.

Pls.' Mot. at 5-6.  Broadly, these contention interrogatories seek defendant's
position on the fair market value of the development fee paid by California Ridge
Wind Energy LLC (California Ridge), the relevance of the development fees paid
by other wind power facility developers for determining the fair market value of
California Ridge's development fee, and the identification of wind power projects
that would be relevant for making a comparative analysis to determine the fair
market value of California Ridge's development fee.  The court agrees with
plaintiffs that defendant has not responded, substantively, to these contention

interrogatories.

Defendant argues that these contention interrogatories are premature, and that the government should not be compelled to respond with information which would be more appropriately disclosed during expert discovery.  According to the government's opposition brief:

> Defendant's objection states that if it does submit evidence regarding the fair market value of the purported development fee in its defense, it will do so through an expert.  Because expert reports have not been exchanged yet, Plaintiffs' request for such information is premature.

> For example, Interrogatory No. 15 asks whether Defendant contends that certain factors are not relevant to a determination of the fair market value of California Ridge's development fee.  But the relevant factors in determining fair market value are, necessarily, part of an expert's approach to valuation.  For example, an expert may determine that the amount of development fees included in the cost basis of wind energy facilities similar in size to California Ridge's are relevant to the fair market value of the development fee included in the claimed qualified cost basis of the California Ridge facility, or, he or she may not consider that information relevant at all.

> . . . .

> Defendant also objected to interrogatories 2, 16, and 17, which seek the identification of facts or projects underlying the responses to Interrogatories 1 and 15, as calling for the disclosure of expert work product and/or expert discovery prior to the deadlines for providing such discovery.  Because the questions posed by interrogatories 2, 16, and 17 refer to facts that may underlie potential arguments that Defendant may make

8

> based on an expert opinion, they also fall within the
> realm of expert discovery, and cannot be answered
> absent expert opinion.  And if an expert chose to analyze
> certain wind projects in the context of his or her expert
> report, the identity of those projects would be revealed in
> the report.

Def.'s Opp. at 15-16.  The court agrees with defendant that these particular
contention interrogatories contain requests for information that is more
appropriately obtained during expert discovery.  The government's disclosure of
its expert report, should this case proceed to expert discovery, is the appropriate
time for plaintiffs to obtain the information they seek in these five contention
interrogatories.

Plaintiffs offer a number of unpersuasive arguments contending that
plaintiffs are entitled to contention discovery now, not later in this litigation.  The
court examines the most substantive of those arguments here.[2]  First, plaintiffs
suggest that their contention interrogatories are not early, or premature, according
to caselaw which has resolved analogous disputes over the timing of contention
discovery.  Pls.' Reply at 6-8.  To the extent that the cases cited by plaintiffs
address the specific circumstances of contention discovery in patent litigation,
those cases are inapposite.  None of plaintiffs' cases are more on point than
*BB & T*; the court views *BB & T* as the most persuasive authority for the resolution
of the parties' dispute over contention discovery.

Next, plaintiffs assert that contention discovery is essential before the
parties complete depositions during the fact discovery period.  Pls.' Reply at 8-9.
To the extent that defendant's deposition witnesses will provide testimony of their
personal knowledge of the contemporaneous review of California Ridge's
development fee, that is a narrower topic than any of the five interrogatories at
issue in plaintiffs' motion.  *See* Oral Argument Recording, at 2:21-24 PM
(plaintiffs' counsel noting that Interrogatory #1 asks for the government's *current*
contentions regarding plaintiffs' development fee).  To the extent that plaintiffs
seek foundational information to support certain topics in their Rule 30(b)(6)

---

[2]/  The court has considered each of plaintiffs' arguments, and finds them insufficient to
invalidate the sound approach taken by the court in *BB & T*.

deposition, those contention deposition topics will be addressed in the opinion filed in the companion case *Bishop Hill* on this date.  The court sees no need for substantive responses to these five contention interrogatories before any fact witness depositions are taken in this case.

Finally, in *Bishop Hill*, plaintiffs allege that they will be handicapped in expert discovery if their proposed contention discovery is not completed during the fact discovery period.  Pls.' *Bishop Hill* Opp. of Sept. 29, 2016, at 12.  The essence of their argument is two-fold.  According to plaintiffs, their expert will be forced to construct an opinion without the benefit of all of the data that the government's expert will be able to access.  In addition, plaintiffs allege that the government will be free to "cherry pick" the data it presents to both its own expert and to plaintiffs' expert.  As the court has previously stated, however, expert discovery allows a party access to the data underlying its opponent's expert opinions.  Opin. of Dec. 21, 2015, at 12.  To the extent that plaintiffs predict that the government will unfairly manipulate expert discovery to its advantage, that is a speculative concern with no basis in fact.  *See* Oral Argument Recording, at 2:53-54 PM (defendant's counsel stating that she has no intention of cherry picking data to influence expert opinion).  The court expects both parties to collaborate in discovery in full accordance with the letter and the spirit of the court's rules.

## III.    Conclusion

For the foregoing reasons, plaintiffs' request that defendant substantively respond to its five contention interrogatories at this point in the litigation must be rejected as premature.  The court also notes that expert discovery in this case is contingent upon plaintiffs' claim surviving summary judgment proceedings.  Accordingly, it is hereby **ORDERED** that Plaintiffs' Motion to Compel Discovery Responses, filed July 21, 2016, is **DENIED**.

/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge