# United States Court of Federal Claims

No. 14-250 C
(Filed Under Seal: December 29, 2017)
(Reissued: January 16, 2018)<b>*</b>

_____

**CALIFORNIA RIDGE WIND ENERGY LLC,**

    *Plaintiff,*

**v.**

**UNITED STATES OF AMERICA,**

    *Defendant.*

_____

Motion for Summary Judgment; Renewable Energy Facilities; Department of Treasury Section 1603 Grants; Internal Revenue Code of 1986, Section 48; The American Recovery and Reimbursement Tax Act of 2009

    *John Carney Hayes, Jr., Esquire,* Nixon Peabody LLP, Washington, D.C., for plaintiff.

    *Miranda Bureau, Esquire*, U.S. Department of Justice, Tax Division (G), Washington, D.C., for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge.*

    This case raises questions regarding the application of a program included as a part of an economic stimulus package enacted by Congress in the wake of the 2009 recession in this country. The program offered cash rebates in lieu of investment credits for qualifying "renewable energy facilities" and is referred to generally herein as Section 1603 cash rebates or cash grants.

    Several disputed matters have arisen between the Department of the Treasury and energy companies that have attempted to qualify for the Section 1603 grants. These problems have arisen not only from issues of statutory interpretation but also because of Treasury efforts to explain the law and advise applicants how to qualify for the grants. *See e.g.*, *Alta Wind I Owner-Lessor C v. United States*, 128 Fed Cl. 702 (2016); *LCM Energy Solutions v. United States*, 128 Fed. Cl. 728 (2016).

---

\* We issued this Opinion under seal on December 29, 2017, and invited counsel to propose redactions prior to its publication. No redactions were proposed by the parties. The December 29 Opinion is hereby reissued for publication, unsealed.

The issues here center on the meaning of "development costs" and whether such costs qualify as a part of "basis" as defined by tax law. More specifically, the following questions pertain: (1) whether the development fee in this case is an eligible cost and therefore a proper element of "basis" given the facts of this case; (2) whether the development fee was a paid cost or merely "circled cash" as defendant claims; and (3) whether the development agreement was a "sham transaction" between subsidiaries of the same entity.

The first question—whether the development fee was an eligible cost given the facts of this case—is a controlling one because the other two questions may depend on a ruling on the first. Moreover, this case differs in that plaintiff treated its development fees as a stand-in for markup or profit that might be realized upon sale of the project, rather than a series of expenses that can be itemized and supported by receipts. Such an accounting does not seem correct intuitively as considered by a layperson, yet uncertainties have arisen at this stage of proceedings whether a developer is entitled to add markup or premium to its basis for purposes of section 1603 rebates.

Given such uncertainties surrounding plaintiff's use of development costs as a part of basis as the term is used in tax statutes, and the fact that such arrangements are to be viewed by the courts on a case-by-case basis, we cannot conclude that this case is free of genuine issues of material fact that prevent a ruling on summary judgment. Defendant's motion for summary judgment is therefore denied.

## BACKGROUND

Congress enacted The American Recovery and Reimbursement Tax Act of 2009 to stimulate an economy that was experiencing a severe recession at the time. The purpose of the Act was to make "supplemental appropriations for job preservation and creation, infrastructure investment, energy efficiency and science, assistance to the unemployed, and State and local fiscal stabilization." Pub. L. 111-5, Div. B, tit. I § 1603, 123 Stat. 115 (as amended by Pub. L. 111-312, tit. VII, § 707, 124 Stat. 3296, 3312).

One part of the statute was Section 1603, which created a system whereby an owner of "specified energy property" became entitled to a grant or rebate equal to 30% of "the basis of such property." The meaning of basis became important because the owner would want to include in that category the highest amounts possible as that was the total used to calculate the 30% grant. The Department of Treasury wanted to use the lowest possible amounts to calculate grants.

Plaintiff California Ridge Wind Energy, LLC began constructing a wind facility at a cost of $456,196,599 in October 2011. The wind facility was placed into service in October 2012. Subsequently, plaintiff applied for a Section 1603 grant payment of $136,858,980 from the Treasury. This was thirty percent of the wind facility's cost basis. The Treasury awarded plaintiff a reduced amount of $127,699,997.

Plaintiff filed a Complaint alleging that Treasury violated Section 1603 of the American Recovery and Reinvestment Act, and demanded $9,158,983 in damages. The $9 million figure represented the difference between the amount to which plaintiff thought itself entitled and the amount of the grant that it received from Treasury. Defendant filed motions for summary judgment on plaintiff's claim and on its counterclaim for $5,635,537. We deny those motions by this Order and encourage the parties to submit a pre-trial schedule leading to trial no later than June of 2018.

## ARGUMENTS

Plaintiff stated that "Section 1603 created a temporary program under which those qualifying for investment tax credits under Section 48 of the Internal Revenue Code of 1986 could instead receive immediate cash grants." Plaintiff developed a wind facility at a cost of $456,196,599 and submitted an application to the United States Department of Treasury to offset that construction expense.

Defendant filed an Answer in May 2014 admitting that it had awarded a Section 1603 cash payment in the amount of $127,699,997 to plaintiff but denied that the Government violated Section 1603. Also, it contended that a recovery by plaintiff should be reduced by set-off against any federal income tax credits that might apply.

Defendant filed a Motion for Summary Judgment in March 2017, claiming that plaintiff "cannot meet its burden to show that any of this purported development fee could properly be included in its cost basis . . . ." Defendant's reasons for this assertion are that (1) the 'development fee' was based on a calculation of the amount plaintiff thought it could realize in a sale of the property, not an amount that it paid as fees for services; (2) bank records reveal a "circular cash transaction" in which plaintiff paid the development fees into a developer's account, then on the same day the payee returned the same amount to plaintiff's account; and (3) defendant believes this transaction to be "an effort to boost the Section 1603 payment by inflating the claimed qualified cost basis of the eligible property."

Defendant's counterclaim is a request for the portion of Treasury's payment to plaintiff that is attributable to the development fee, which was an overpayment to which it was not entitled. This amount is alleged by defendant to be $5,635,537.

Plaintiff filed a Response to Defendant's Motion for Summary Judgment arguing that the Government has not shown that the development agreement was a "sham transaction" and that the record contains sufficient facts to support a conclusion that the development agreement had a business purpose. Plaintiff asserts that facts in the record confirm that the development agreement had economic substance and whether Invenergy and Firstar intended to form a partnership is a question of material fact.

Defendant's Reply in Response summarized its argument as follows: "[i]n reality, plaintiff's 'development fee' was nothing more than a papered up development agreement and a circular financial transaction in which $50 million made a round trip through two Invenergy bank accounts. Plaintiff argues it should keep that money, and receive more, not because it actually incurred a development fee, but because it wants to add a 'markup' to California Ridge's cost basis."

Yet, the record contains suggestions that a markup or premium or profit may be appropriate in certain circumstances when considering total costs. These contentions of the parties comprise the crux of the case at this point. The level of certainty that we need to rule that no genuine issues of material fact exist of record is not so far available to the court; we cannot resolve this case on summary judgment at this time.

Defendant's Motion for Summary Judgment is DENIED for the reasons stated. All other motions are DENIED as moot. The parties will meet within ten days to agree on a pre-trial schedule and submit the schedule to the court in the form of a joint motion that may be filed by either party on behalf of both. Counsel may, but are not required to request a hearing to discuss the matters covered by this Order if necessary to sharpen the issues for trial, or for any other purpose.

**IT IS SO ORDERED.**

s/ *Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge